UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JIMMY MCLAIN MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.:  3:21-cv-342-KAC-DCP |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on (1) Petitioner's "Motion to Reconsider and Objections to Magistrate Judge's Memorandum and Order [Doc. 19] Denying Petitioner's First Motion for Leave to Seek Discovery [Doc. 8]" [Doc. 20] and (2) two of the United States's Motions for Extension of Time related to Petitioner's Motion [Docs. 30, 32].  For the reasons below, the Court **DENIES** (1) the United States's Motions [Docs. 30; 32] and (2) Petitioner's Motion [Doc. 20].

Petitioner filed a "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence" (Section 2255 Petition) [Case No. 3:21-cv-342, Doc. 1; Case No. 3:17-cr-86, Doc. 358], which he subsequently amended [Doc. 2].[1]  In his Section 2255 Petition, Petitioner asserts that he was denied the right to effective assistance of counsel in violation of the Sixth Amendment because trial counsel failed to (1) "conduct an independent defense investigation," [Doc. 2 at 9]; (2) "effectively communicate the applicable law and the government's evidence to Mr. Moore, which prevented Mr. Moore from meaningfully considering his options of pleading guilty or proceeding to trial, and deprived Mr. Moore of any formal plea offer to consider," [*id.* at 12]; (3) "take necessary steps to make a clear and complete record in the form of filing pre-trial

---

[1] Unless otherwise noted, all citations are to Petitioner's civil case.

motions, making objections, and requesting jury instructions," [*id.* at 14]; and (4) "effectively raise and litigate errors on appeal," [*id.* at 20]. Further, Petitioner alleges that his sentence violated his "constitutional rights to due process, a fair trial, and against cruel and unusual punishment guaranteed by the Fifth, Sixth, and Eighth Amendments" because (1) his "sentence increased because he exercised his constitutional right to a trial," [*id.* at 18]; (2) "law enforcement destroyed critical packaging evidence," [*id.* at 19]; and (3) the "government failed to disclose exculpatory evidence"—specifically that "[t]he circumstances surrounding Officer Graham's position and department change and the destruction of material evidence could have provided exculpatory evidence," [*id.* at 20].

Petitioner thereafter filed his "First Motion for Leave to Seek Discovery" [Doc. 8], requesting leave to seek from the United States:

1. All notes, memorandums, reports, recordings, and other materials that government witnesses Wally Racelis, Gary Holder, Dennis Graham, and Wendy Boles reviewed in preparation for their testimony at pre-trial proceedings or at trial. . . [A]s Mr. Moore seeks to prove that trial counsel's performance was ineffective, late-production of those materials is vital to demonstrate the prejudice that Mr. Moore suffered when trial counsel failed to obtain materials that would test the witnesses' credibility in a case that hinged on the witnesses' credibility.
2. Any investigative materials from Dennis Graham, Wendy Boles, or other law enforcement officials that either did not inculpate Mr. Moore or that exculpated Mr. Moore, including but not limited to surveillance footage from United States Postal Service Offices on days that the packages listed in government's Trial Exhibit 68A were shipped from California to Tennessee . . . or picked-up at a California post office. . . . The only way for Mr. Moore to discover what items trial counsel did not receive when trial counsel failed to file such requests before trial is to receive responses from the government as if they were pretrial responses.
3. Officer Dennis Graham's complete investigative file for this case. . . .
4. All documents that were produced by the government to any defendant in the conspiracy case pursuant to Federal Rule of Criminal Procedure 16(a), or that should have been produced by the government pursuant to Rule 16(a).

2

5. Transcripts of co-defendant Jamie Cook's August 25, 2020 motion hearing and April 13, 2021 sentencing hearing. . . . The motion hearing transcript contains the sworn statements of Mr. Moore's co-defendant—a cooperating witness in the government's case against Mr. Moore—and the testimony of the three other witnesses at the motion hearing—which bear on the credibility of Mr. Cook and provide an independent defense investigative assessment. The sentencing hearing transcript would provide details on any benefit Mr. Cook received from the government for cooperating against Mr. Moore and provide Mr. Moore with sworn testimony of another Monroe County Sheriff's Department officer to compare with Officer Graham's version of events.
6. All evidence that the government was obligated to produce in connection with any stage of the proceedings, pursuant to the prosecution's statutory and constitutional obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), *United States v. Agurs*, 427 U.S. 97 (1976), *United States v. Bagley*, 473 U.S. 667 (1985), *Kyles v. Whitley*, 514 U.S. 419 (1995), *Strickler v. Greene*, 527 U.S. 263 (1999), and their progeny.
7. All evidence that the government was obligated to produce in connection with any stage of the proceedings, pursuant to Federal Rule of Criminal Procedure 26.2, 18 U.S.C. § 3500, and *Jencks v. United States*, 353 U.S. 657 (1957). . . .
8. All records associated with Officer Dennis Graham's employment with the Monroe County Sheriff's Department and his reassignment to the Vonore City Police Department.
9. All written correspondence between any government attorney or employee and Officer Graham or the Monroe County Sheriff's Department.
[and]
10. All documents concerning the DEA's chemical analysis of government's trial exhibit 25. Despite reference to the chemical analysis report in the stipulation presented at trial, there is no record of a chemical analysis report in this case in the materials available to undersigned counsel.

[Doc. 8 at 8-12].

Additionally, Petitioner sought to depose (1) Attorney Mark Brown, who served as Petitioner's trial counsel, "regarding his representation of [Petitioner];" (2) Officer Dennis Graham "regarding his investigation in this case, his history as a law enforcement officer, and his separation from the Monroe County Sheriff's Department;" and (3) Postal Inspector Wendy Boles "regarding her role in the investigation, what she witnessed during the evidence collection on January 5, 2017,

and what potential evidence she sought in relation to that investigation" [Doc. 8 at 12-13]. Petitioner also sought to issue interrogatories to:

1. Assistant United States Attorney Cynthia Davidson regarding plea negotiations with Mr. Brown and pre-trial interviews with Officer Graham and Mr. Cook.
2. Drug Task Force Agent Dax Mcgowan regarding his role in the investigation and what he witnessed during the evidence collection on January 5, 2017.
3. Monroe County Sheriff's Deputy Josh Berrong regarding his role in the investigation and what he witnessed during the evidence collection on January 5, 2017.

[Doc. 8 at 13]. Finally, Petitioner asked the Court to issue subpoenas duces tecum to:

1. Gary Holder for the content of his cell phone records, including but not limited to his call history and text messages, from May 2016 through November 2018.
2. Gary Holder's cell phone provider for the non-content records of cell phone records from May 2016 through November 2018.
3. Gary Holder for the content of his Facebook page from May 2016 through November 2018.
4. Facebook for the content of Gary Holder's Facebook page from May 2016 through November 2018.
5. Tennessee Bureau of Investigation [(TBI)] for the investigative file in the October 2018 officer-involved shooting of Stephen Richard Weaver to which Officer Dennis Graham was a witness.
6. Dennis Graham for his official investigative file related to [Petitioner's] arrest.

[Doc. 8 at 13-14].

Notably, in his "First Motion for Leave to Seek Discovery," Petitioner asserted that "the prejudice to Mr. Moore can also be demonstrated through the record" [Doc. 8 at 6]. But Petitioner avers that "discovery under the Federal Rules of Criminal Procedure and Civil Procedure would allow Mr. Moore 'to find that extra evidence he still needs to prove or strengthen his case'" [*Id.* (quoting *Post v. Bradshaw*, 621 F.3d 406, 425 (6th Cir. 2010)]. The United States opposed Petitioner's "First Motion for Leave to Seek Discovery" [*See* Doc. 11].

The Court referred Petitioner's "First Motion for Leave to Seek Discovery" to United States Magistrate Judge Debra C. Poplin for her consideration and determination [Doc. 13]. After thoroughly considering the Parties' arguments, [*see* Docs. 8; 11; 12], Judge Poplin issued a

4

Memorandum and Order, [Doc. 19], denying Petitioner's Motion.  **First**, as to Petitioner's requests for discovery from the United States, the Court found that Petitioner's request for transcripts of Codefendant Cook's August 25, 2020 motion hearing and April 13, 2021 sentencing hearing was moot because the District Judge previously assigned to this case had already addressed it [*Id.* at 9]. And the Court found that Petitioner's request for the Drug Enforcement Agency's (DEA) chemical analysis was moot because the Government voluntarily attached the chemical analysis to its Response [*Id.*]. Further, the Court denied Petitioner's discovery requests one (1) through four (4) because "Petitioner does not identify any facts from the requested discovery that would assist him in obtaining relief" [*Id.* at 9-12]. As to requests six (6) and seven (7), the Court denied the requests because "Petitioner has not demonstrated that any of th[e] [requested] material exists and/or had not been produced" and his requests "do[] not meet the good cause standard" [*Id.* at 12-13]. And the Court denied Petitioner's requests eight (8) and nine (9) because "Petitioner's reasons [are] too speculative to warrant such discovery" and his requests are "too broad" [*Id.* at 13-18].

**Second**, the Court denied Petitioner's request to depose Inspector Boles because "Petitioner does not explain how her testimony would resolve a factual dispute that is materially related to his Amended Petition" [*Id.* at 20]. Likewise, the Court denied Petitioner's request to depose Attorney Brown because Petitioner "does not explain why he needs Attorney Brown's deposition" and "has failed to identify any specific areas of inquiry to Attorney Brown with details of what he hopes to learn through the deposition" [*Id.*]. And the Court again noted that Petitioner failed to show good cause to further inquire into Officer Graham's employment [*Id.*]. **Third**, the Court found Petitioner's requests for interrogatories not well taken because "[w]hile Petitioner includes the general topics of his proposed interrogatories, he did not actually submit his proposed interrogatories" as required under Rule 6(b) of the Rules Governing Section 2255 Proceedings.

5

Further, "Petitioner does not explain how the interrogatories will resolve any factual disputes that would entitle him to relief" [*Id.* at 21-24].

***Finally***, the Court concluded that Petitioner failed to establish good cause to issue the requested subpoenas. As to Codefendant Holder's phone records and Facebook content, the Court noted that "none of the claims in [Petitioner's] Amended Petition rest upon Holder's cell phone use and that only one of his claims is merely tangentially related to Holder's Facebook use" [*Id.* at 25]. And "it [was] not clear to the Court why Petitioner [could not] review his own Facebook account to determine if, and when, he and Holder became friends" [*Id.* at 27]. Further, as to Codefendant Holder's credibility, "the jury heard testimony that Holder was an informant and could weigh his testimony appropriately" [*Id.*]. As to the TBI Investigation File, the Court concluded that Petitioner's request was "a fishing expedition" and Petitioner failed to establish good cause for the request [*Id.* at 29]. Accordingly, the Court denied Petitioner's "First Motion for Leave to Seek Discovery" in full.

Thereafter, Petitioner filed the instant "Motion to Reconsider and Objections to Magistrate Judge's Memorandum and Order [Doc. 19] Denying Petitioner's First Motion for Leave to Seek Discovery [Doc. 8]" [Doc. 20]. Petitioner claims that the Magistrate Judge erred by considering his request for transcripts of Codefendant Cook's August 25, 2020 motion hearing and April 13, 2021 sentencing hearing and finding Petitioner's request for DEA's chemical analysis moot [*Id.* at 4-5]. Further, Petitioner asserts that "the Magistrate Judge's Order incorrectly applies the legal standard for whether Mr. Moore satisfied the 'good cause' standard to entitle him to discovery" and "objects to the factual findings on each request because of the application of the incorrect legal standard and clearly erroneous conclusions resulting therefrom" [*Id.* at 1]. Specifically, Petitioner alleges that the Magistrate Judge erroneously "conflated the standard of

6

review for 'good cause' with whether the requested discovery reasonably related to a cognizable claim," asserting that the Magistrate Judge should have "engage[d] in separate analyses," first assessing the "potential merit" of his claims "if the facts are developed" and only then considering whether the requested materials could support that claim [*Id.* at 9-10].

On February 27, 2023, the Court ordered the United States to file any response to Petitioner's Motion to Reconsider and Objections within thirty (30) days [*See* Doc. 25]. On March 29, 2023, the United States filed a "Motion for Extension of Time," seeking a "21-day extension, up to and including April 19, 2023" [Doc. 28]. With no opposition, the Court granted the United States's Motion [*See* Doc. 29]. But the United States did not file a response by this deadline. Instead, on April 24, 2023, after the deadline, the United States filed a motion seeking "a further 14-day extension" through May 3, 2023 "to respond" "[d]ue to the undersigned attorney's caseload" [Doc. 30]. Petitioner opposed this Motion [*See* Doc. 31 at 1]. On May 4, 2023, the United States filed a second "Motion for Extension" [Doc. 32], seeking "an additional one-day extension." The United States avers that it "finished its response late last night [May 3, 2023] and did not get it filed" [Doc. 32]. Petitioner opposed the United States's further request for extension [Doc. 33].

The Court may extend a deadline "after the time has expired" upon concluding that "the party failed to act because of excusable neglect." *See* Fed. R. Civ. P. 6(b)(1)(B). "Whether excusable neglect exists, and whether a deadline should be extended, are decisions left to the discretion of the district court." *See Rodriguez v. Hirshberg Acceptance Corp.*, 62 F.4th 270, 276 (6th Cir. 2023) (citing *Howard v. Nationwide Prop. & Cas. Ins. Co.*, 306 F. App'x 265, 266 (6th Cir. 2009)). Following *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380 (1993), the Court balances five non-exclusive factors in making this equitable

determination: (1) the reason for the delay, (2) whether the delay was within the reasonable control of the moving party, (3) any prejudice to the nonmoving party, (4) the length of the delay and its impact on the judicial proceedings, and (5) whether the late-filing party acted in good faith. *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006). But the *Pioneer* factors "do not carry equal weight; the excuse given for the late filing must have the greatest import." *United States v. Munoz*, 605 F.3d 359, 372 (6th Cir. 2010) (citation omitted).

Here, the United States cites the assigned attorney's caseload to explain its failure to comply with the relevant deadlines. But an attorney must organize and manage her caseload and endeavor to request appropriate extensions before a deadline expired. *See* Fed. R. Civ. P. 6(b)(1) (requiring only a showing of "good cause" if a request is made "before the original time or its extension expires"). "[I]nadvertence . . . do[es] not usually constitute excusable neglect." *See Pioneer Inv. Servs. Co.*, 507 U.S. at 392. And the "fact that an attorney is 'busy' on another matter does not constitute excusable neglect." *See Baker v. Raulie*, 879 F.2d 1396, 1400 (6th Cir. 1989) Accordingly, the Court **DENIES** the United States's Motions [Docs. 30, 32]. The Court, however, must still consider the merits of Petitioner's Motion to Reconsider and Objections.

When assessing objections to a magistrate judge's order on a non-dispositive matter, a district court must "modify or set aside any part of the order that is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. 636(b)(1)(A). Applying this standard, the Court reviews factual findings for clear error and conclusions of law de novo. *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019). A factual finding is clearly erroneous if the Court "is left with the definite and firm conviction that a mistake has been committed." *Id.* at 219 (internal citations omitted). A legal conclusion is contrary to law if "it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Id.* (internal citations omitted).

8

A petitioner seeking habeas relief is not entitled to discovery as a matter of course. *See Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001). Under Rule 6 of the Rules Governing Section 2255 Proceedings, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure[2] and may limit the extent of discovery." Rules Governing Section 2255 Proceedings, Rule 6(a). "A party requesting discovery must provide reasons for the request. The request must also include any proposed interrogatories and requests for admission, and must specify any requested documents." Rules Governing Section 2255 Proceedings, Rule 6(b).

Good cause is established "where specific allegations . . . show reason to believe that [the petitioner] may, if the facts are fully developed, be able to demonstrate" entitlement to relief. *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)). The moving party bears the "burden of demonstrating the materiality of the information requested." *See Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001). Rule 6 "does not permit a fishing expedition masquerading as discovery." *See Wills v. United States*, Nos. 2:18-cv-020, 2:16-cr-055, 2020 WL 1963509, at *4 (E.D. Tenn. Apr. 23, 2020) (quotation and citation omitted); *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004). "The upshot of these requirements is that '[g]eneralized statements regarding the possibility of the existence of discoverable material will not be sufficient'; the movant must demonstrate that the requested discovery is material, 'and it is material when there is a reasonable probability that, [if] the evidence [is] disclosed, the result of

---

[2] Federal Rule of Civil Procedure 26, itself, also includes limitations on the scope of permissible discovery. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

9

the proceeding [may be] different.'" *Cooper v. United States*, No. 3:19-cv-01007, 2021 WL 354084, at *2 (M.D. Tenn. Feb. 2, 2021) (quoting *Velazquez-Rivera v. United States*, 54 F. Supp. 3d 168, 170 (D.P.R. 2014)).

The Court addresses Petitioner's objections in turn. **First**, the decision not to fully reconsider Petitioner's request for transcripts of Codefendant Cook's August 25, 2020 and April 13, 2021 hearings was not clearly erroneous or contrary to law. Petitioner seeks these transcripts in part because they allegedly contain statements that "bear on the credibility of Mr. Cook and provide an independent defense investigative assessment" [Doc. 8 at 11]. But, as Judge Poplin noted, "the District Judge has already" effectively "addressed" Petitioner's request [*See* Doc. 19 at 9]. In his underlying criminal case, Petitioner previously requested various documents related to Codefendant Cook, including asking the Court to unseal the transcripts of Codefendant Cook's August 25, 2020 and April 13, 2021 hearings [*See* Case No. 3:17-cr-86-3, Doc. 365]. The Court denied Petitioner's request, explaining that "Defendant Moore's arguments are a fishing expedition and nothing more" [Case No. 3:17-cr-86-3, Doc. 390 at 6]. The Court noted that "[u]pon entry of this memorandum and order [Case No. 3:17-cr-86-3, Doc. 390], Defendant Moore will have . . . access to the full extent of Codefendant Cook's direct cooperation with the government" [*Id.*]. The Court concluded that Petitioner was not entitled to further discovery, including Codefendant Cook's sealed hearing transcripts, because the value of the transcripts to Petitioner was negligible and "heavily outweighed by Codefendant Cook's privacy interests" [*Id.* at 7]. Accordingly, the Court had already determined that Petitioner was not entitled to those documents at least in part because the value of those transcripts was negligible. Nothing about Petitioner's argument now changes that calculus. And Judge Poplin did not err in refusing to effectively reconsider the District Judge's prior determinations.

Further, to the extent Petitioner now asserts that statements within the hearing transcripts would provide "sworn testimony of another . . . Monroe County Sheriff's Department officer to compare with Officer Graham's version of events," [Doc. 8 at 11], Petitioner has not established good cause sufficient to entitle him to the requested discovery. Petitioner failed to provide any specific allegations showing that disclosure of the transcripts, including the other officer's testimony, would produce facts that may demonstrate an entitlement to the relief sought in his Section 2255 Petition, as is his burden at this stage in this case. *See Bracy*, 520 U.S. at 908-09. Accordingly, the Court **DENIES** the relevant portion of Petitioner's Motion to Reconsider and Objections [Doc. 20].

*Second*, on this record, the Court's determination that Petitioner's request for the DEA chemical analysis is moot was not clearly erroneous or contrary to law. The principal mention of the chemical analysis in Petitioner's Section 2255 Petition appears as part of Petitioner's claim that trial counsel failed to conduct an independent defense investigation [Doc. 2 at 9-11]. Petitioner asserts that "trial counsel advised Mr. Moore to stipulate to the results of forensic chemical testing of methamphetamine" and "[t]hat stipulation proved essential elements of the government's case without presenting a supporting chemical analysis report" [*Id.* at 11]. In response to Petitioner's discovery request, the United States voluntarily disclosed the report referenced in the trial stipulation [*See* Doc. 11-1]. In light of that disclosure, the Court found Petitioner's request moot [*See* Doc. 19 at 9]. On this record and given Petitioner's initial argument, there is no clear error in this determination.

But even if Petitioner's initial request for "[a]ll documents concerning the DEA's chemical analysis of government's trial exhibit 25" encompassed additional documents that Petitioner believes are in the possession of the United States and part of a "chemical analysis report,"

Petitioner has failed to show good cause for this requested discovery [*See* Doc. 20 at 6]. Petitioner's "First Motion for Leave to Seek Discovery" does not specify any basis for this request [*See* Doc. 8 at 12], and the Court cannot discern one given the limited reference to the report in Petitioner's Section 2255 Petition. For example, there is no suggestion that the chemical analysis report was flawed or inaccurate in a way material to Petitioner's case; no suggestion that there was a reason for trial counsel to question the report or its veracity; and no suggestion that stipulating to the results of the report was anything other than a strategic decision made by trial counsel. Further, even if the United States provided all potential documentation to support the report and an independent analyst disagreed with the results in some way, this would not automatically tend to show that Petitioner is entitled to relief on his ineffective assistance of counsel claim. Accordingly, the Court **DENIES** the relevant portion of Petitioner's Motion to Reconsider and Objections [Doc. 20].

***Third***, the Court both applied the correct standard in evaluating Petitioner's remaining discovery requests and properly evaluated Petitioner's remaining requests. Petitioner avers that the Court should "engage in separate analyses," assessing the "potential merit" of his Section 2255 claim before considering whether the requested discovery would support that claim [Doc. 20 at 9-10]. But Petitioner bears the burden of demonstrating both good cause and materiality. *See Velazquez-Rivera*, 54 F. Supp. 3d at 170; Rules Governing Section 2255 Proceedings, Rule 6(a). And Sixth Circuit precedent suggests that the Court need not evaluate these requirements in a particular order. *See Stanford*, 266 F.3d at 460 (finding district court did not abuse its discretion by denying request for discovery where discovery requested by petitioner would not have resolved any factual disputes that could entitle him to relief, even if the facts were found in his favor, and fell more in the category of a fishing expedition); *Williams*, 380 F.3d at 975

12

(denying discovery request where "[Petitioner] ha[d] not shown that the requested discovery could 'resolve any factual disputes that could entitle him to relief'"(citation omitted)); *Blake v. United States*, No. 20-6370, 2021 WL 6098423, at *5 (6th Cir. June 17, 2021) ("[Petitioner] did not provide any reason for her requests and therefore did not make a substantial showing that discovery would demonstrate her illegal confinement."). The Magistrate Judge therefore properly marshalled the applicable law. And there is no clear error in the Court's factual findings or any error in its conclusions of law with respect to Petitioner's remaining requests. Accordingly, the Court **DENIES** the relevant portions of Petitioner's Motion to Reconsider and Objections [Doc. 20].

For the reasons above, the Court **DENIED** (1) the United States's Motions for Extension of Time related to Petitioner's Motion [Docs. 30; 32] and (2) Petitioner's "Motion to Reconsider and Objections to Magistrate Judge's Memorandum and Order [Doc. 19] Denying Petitioner's First Motion for Leave to Seek Discovery [Doc. 8]" [Doc. 20].

SO ORDERED.

s/ Katherine A. Crytzer  
KATHERINE A. CRYTZER  
United States District Judge