UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JIMMY MCLAIN MOORE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Nos.: 3:21-CV-342-KAC-DCP |
| | ) | 3:17-CR-86-KAC-DCP-3 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO VACATE,
SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255**

A jury convicted Petitioner Jimmy McLain Moore of conspiring to distribute fifty (50) grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A) [*See* Doc. 155].[1] The Court sentenced him to 292 months' imprisonment [Doc. 240 at 2-3]. The United States Court of Appeals for the Sixth Circuit affirmed Petitioner's conviction and sentence [Doc. 309]. And the Supreme Court denied his petition for a writ of certiorari [Doc. 323]. Thereafter, Petitioner timely filed an "Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence" and supporting documents [*See* Docs. 358, 359; *see also* 3:21-CV-342, Docs. 1, 2, 4, 14]. The United States opposed [3:21 CV-342, Doc. 17], and Petitioner filed a Reply and Supplement [3:21-CV-342, Doc. 18, 23]. For the below reasons, the Court denies Petitioner's Motion.

**I.     Background**

In 2017 Petitioner and codefendants Jamie Cook and Gary Holder were charged with conspiring to distribute fifty (50) grams or more of methamphetamine [*See* Doc. 1 (Indictment)].

---

[1] Unless otherwise noted, all citations to the record refer to the docket in Petitioner's criminal case, No. 3:17-CR-86-3 (E.D. Tenn.).

Petitioner went to trial. Both codefendants cooperated in some degree against Petitioner. At trial, the United States's theory was that Petitioner, who lived in California, mailed methamphetamine to various locations in Tennessee [*See* Doc. 356 at 11 (Excerpt of Jury Trial Proceedings (Opening Statement of the United States))].

Around January 5, 2017, United States Postal Service Inspector Wendy Boles, with the cooperation of Cook, intercepted a package that was mailed from Petitioner's address to Holder in East Tennessee that contained methamphetamine in plastic bags [*See* Doc. 258 at 46, 108-09 (Trial Transcript)]. Dennis Graham, an officer then with the Monroe County Sheriff's Office, took part in the investigation and oversaw recorded conversations between Petitioner and Cook [*See id*. at 84-87; *see also* United States Exhibit 13B]. Law enforcement believed that the package to be intercepted contained methamphetamine because Petitioner, in his own words to Cook, confirmed that he would send Holder a large shipment of methamphetamine [*See* Doc. 258 at 84-87; *see also* United States Exhibit 13B]. Once the package was intercepted, Inspector Boles confirmed that (1) the Priority Mail Express label on the package listed the sender address as Petitioner's address linked to his driver's license and (2) that the package was addressed to Holder [*See* Doc. 258 at 111-18 (discussing United States Exhibit 2); *see also* United States Exhibits 24, 28A, 28B].

After intercepting the package and confirming key details, law enforcement executed a controlled delivery, allowing Holder to retrieve the package from the post office and proceed to his vehicle [*See* Doc. 258 at 108-09, 120]. After Holder traveled a short distance, law enforcement executed a traffic stop and searched the vehicle with Holder's consent [*See id.*]. That search yielded the intercepted package and nearly one (1) pound of methamphetamine in the package [*See id.* at 44, 45-46, 90, 111-18; *see also* United States Exhibit 2]. The Priority Mail Express label

2

listed a sender address and phone number both tied to Petitioner—the sender address was linked to Petitioner's driver's license and the phone number was one that Petitioner had previously provided to Holder [*See* Doc. 258 at 38-41, 46, 91-92, 112-115; *see also* United States Exhibit 2].

At trial, the United States introduced videos of the controlled delivery and photographs of the package and mailing label as various exhibits [*See* Doc. 258 at 38-41, 46, 91-92, 112-115; *see e.g.*, United States Exhibits 2, 22A-D, 24]. But the United States did not introduce the physical package as evidence. Approximately two weeks before trial, the United States informed Petitioner's counsel that "when law enforcement seized the drugs, they did not take the package or packing materials into evidence. [And t]hose items have been destroyed" [*See* 3:21-CV-342, Doc. 14-5 at 1].

The United States also introduced other salient evidence at trial. Recorded phone calls captured Petitioner speaking to Cook regarding the shipment of packages of methamphetamine on more than one occasion [*See* Doc. 145-1 (Call Transcripts)]. Records showed that the phone number both codefendants contacted belonged to Petitioner [*See* Doc. 258 at 36-39, 91-92, 166; *see also* United States Exhibit 13B]. The United States also introduced text messages between Holder and a phone number linked to Petitioner discussing mailing packages of methamphetamine [*See* Doc. 258 at 39, 165-66; *see also* United States Exhibits 8-12]. Holder also testified about his text messages with Petitioner [*See* Doc. 258 at 38-39]. For example, Holder testified that one set of text messages concerned Holder sending Petitioner his address so Petitioner could send Holder a package of methamphetamine [*See id.* at 39 (discussing United States Exhibit 8)]. Holder also testified about another set of text messages where Holder asked Petitioner to send him a tracking number for a package, Petitioner did so, and then Holder confirmed that the package contained methamphetamine [*See id.* at 40 (discussing United States Exhibit 9)]. Holder also provided that

3

he had multiple cell phone numbers for Petitioner [*See id.* at 37-38]. Each time Petitioner changed his number, he would inform Holder of the new number, allowing them to continue communicating about mailing methamphetamine [*See id.* at 41-42; *see also* 3:21-CV-342, Doc. 2-1 at 19 (United States Exhibit 10)]. And Holder testified that "every package he received" from the address associated with Petitioner "was supposed to" contain methamphetamine [*See* Doc. 258 at 71-72]. Therefore, he knew that each package he received from Petitioner's address contained illegal narcotics [*Id.*]. Law enforcement confirmed that multiple packages were mailed from Petitioner's address to Holder, each containing methamphetamine [*See id.* at 158-61].

A jury convicted Petitioner of conspiring to distribute fifty (50) grams or more of methamphetamine [*See* Doc. 155 (Judgment)]. The Court sentenced Petitioner to 292 months' imprisonment [Doc. 240 at 2-3]. Petitioner appealed. The United States Court of Appeals for the Sixth Circuit affirmed Petitioner's conviction and sentence [Doc. 309]. Petitioner petitioned for a writ of certiorari, which the United States Supreme Court denied on October 5, 2020 [Doc. 323].

Petitioner timely filed his operative Amended Petition on October 5, 2021, raising seven (7) claims for relief [*See* Doc. 359; *see also* 3:21-CV-342, Doc. 2 at 9-20]. Petitioner thereafter filed a "Memorandum in Support" on May 16, 2022 [3:21-CV-342, Doc. 14]. The United States opposed [3:21-CV-342, Doc. 17]. And Petitioner later filed a Reply [3:21-CV-342, Doc. 18] and Supplement [3:21-CV-342, Doc. 23]. Petitioner, who is represented by counsel, raised new grounds for relief supported by different facts in filings subsequent to his Amended Petition [*See* 3:21-CV-342, Docs. 14, 18, 23]. But Petitioner did not file any motion requesting leave to further amend his Petition under Rule 15, so the Court does not consider them. *See Evans v. United States*, 284 F. App'x 304, 313 (6th Cir. 2008) (reviewing a denial of a Section 2255 motion) (citing *Mayle v. Felix*, 545 U.S. 644, 650 (2005) ("An amended habeas petition . . . does not relate back (and

thereby escape AEDPA's one-year time limit) when it asserts" "new [bases] for relief supported by facts that differ in both time and type from those the original pleading set forth")); *see also Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010) (noting that issues raised for the first time in a reply brief are not properly before the Court); *see also Welch v. United States*, No. 1:21-cr-20137, 2023 WL 5105040, at *2 (E.D. Mich. Aug. 8, 2023). Nor should it, because these newly-asserted grounds are time-barred. *See* Rule 2(b)(2) of Rules Governing Section 2255 Proceedings (requiring Section 2255 movants to set forth "all grounds for relief available to the moving party" and "the facts supporting each ground"); *see also* 28 U.S.C. § 2255(f) (generally giving a Petitioner one (1) year from "the date on which the judgment of conviction becomes final" to file); *see also Bender v. United States*, 372 F. App'x 638, 643 (6th Cir. 2010) (affirming denial of motion to amend where petitioner offered "no explanation why he could not have asserted the newly asserted performance deficiencies in the original § 2255 motion"). This is not a case where Petitioner offers late newly-discovered facts. *See* 28 U.S.C. § 2255(f)(4). After the matter was briefed, the Court reassigned the matter to the undersigned.

## II.     <u>Legal Standard</u>

Under 28 U.S.C. § 2255(a), a federal prisoner may move to vacate, set aside, or correct his judgment of conviction and sentence based on claims that: (1) "the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "the court was without jurisdiction to impose such sentence;" or (3) "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). To obtain post-conviction relief under Section 2255, Petitioner bears the burden to show: (1) "an error of constitutional magnitude;" (2) "a sentence imposed outside the statutory limits;" or (3) "an error of fact or law that was so fundamental as to render the entire proceeding invalid." *See Mallett v. United States*,

334 F.3d 491, 496-97 (6th Cir. 2004) (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)). When a petitioner bases his claim on trial error, he must show that any trial error "resulted in actual prejudice"—that it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (citations and quotations omitted). To obtain collateral relief under Section 2255, a petitioner "must clear a significantly higher hurdle than would exist on direct appeal" and show a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

If the court does not summarily dismiss a motion under Rule 4(b) of the *Rules Governing Section 2255 Proceedings in the United States District Courts*, Rule 8 requires the court to review the answer and the record and determine whether an evidentiary hearing is warranted. *Rules Governing Section 2255 Proceedings in the United States District Courts* Rule 8. If a petitioner presents a salient factual dispute, "the habeas court must hold an evidentiary hearing." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). But an evidentiary hearing is not required "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *See Valentine*, 488 F.3d at 333 (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). Indeed, "conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255." *Gabrion v. United States*, 43 F.4th 569, 578 (6th Cir. 2022) (quoting *Jefferson v. United States*, 730 F.3d 537, 547 (6th Cir. 2013)). Here, no evidentiary hearing is required because no salient factual dispute exists. *See Valentine*, 488 F.3d at 333; *see also Arredondo*, 178 F.3d at 782. Thus, the Court proceeds on the record.

## A. Even if Petitioner Has Not Procedurally Defaulted[2] His Ineffective Assistance Of Counsel Claims, He Is Not Entitled to Relief.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI. And the Supreme Court has held that the Sixth Amendment guarantees the effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 680 (1984). "To succeed on an ineffective assistance claim, a petitioner must show that counsel's performance was both deficient and prejudicial." *McCormick v. United States*, 72 F.4th 130, 132 (6th Cir. 2023). "[T]he inability to prove either one of the prongs—regardless of which one—relieves the reviewing court of any duty to consider the other." *Nichols v. United States*, 563 F.3d 240, 249 (6th Cir. 2009) (en banc).

To be deficient, counsel's performance must fall "below prevailing professional norms." *See Bullard v. United States*, 937 F.3d 654, 661 (6th Cir. 2019) (citation and quotation marks omitted). Establishing "deficient" performance requires Petitioner to "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. The Court "indulge[s] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and reviews counsel's conduct "in light of the information known [to counsel] at the time of the decisions, not in hindsight." *Id.* at 680, 689.

To be "prejudicial," Petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Bullard*, 937

---

[2] Petitioner likely procedurally defaulted his ineffective assistance of counsel claims because he failed to raise them on direct appeal. "Under the Supreme Court's procedural-default rule, [Petitioner's] failure to raise his [ineffective assistance] claim during the main event (his criminal litigation) means that he presumptively cannot raise it in an after-the-fact § 2255 motion." *See Wallace v. United States*, 43 F.4th 595, 602 (6th Cir. 2022) (citation and quotation marks omitted).

F.3d at 661 (citation and quotation marks omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Even an unprofessional error does "not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. Showing "prejudice is not easy." *See Bullard*, 937 F.3d at 661 (citation and quotation marks omitted). Petitioner faces a "high burden." *See id.*

Petitioner raises four (4) ineffective assistance of counsel claims. *First*, Petitioner asserts that his counsel failed to "conduct an independent defense investigation" [3:21-CV-342, Doc. 2 at 9]. *Second*, he argues that his counsel failed to "effectively communicate the applicable law and the government's evidence to [Petitioner], which prevented [Petitioner] from meaningfully considering his options of pleading guilty or proceeding to trial, and deprived [him] of any formal plea offer to consider" [*Id.* at 12]. *Third*, Petitioner claims that his counsel failed to "take necessary steps to make a clear and complete record in the form of filing pre-trial motions, making objections, and requesting jury instructions" [*Id.* at 14]. *Last*, he asserts that counsel failed to "effectively raise and litigate errors on appeal" [*Id.* at 20]. For the reasons below, each fails.

### i. Petitioner's Claim That Counsel Failed To Conduct An Independent Defense Investigation Fails (Claim One).

The focus in a failure-to-investigate claim is the reasonableness of counsel's investigation. *See Wiggins v. Smith*, 539 U.S. 510, 527 (2003) (focusing on the reasonableness of an investigation, rather than the underlying decision); *see also Cullen v. Pinholster*, 563 U.S. 170, 192-94 (2011). "In assessing the reasonableness of [an attorney's] investigation," the Court considers "not only the quantum of evidence already known to counsel, but also whether the known evidence would lead . . . reasonable attorney[s] to investigate further." *Wiggins*, 539 U.S. at 527. Decisions that "might be considered sound trial strategy" generally do not constitute ineffective assistance. *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). "Defense lawyers have limited time

8

and resources, and so must choose among countless strategic options." *Dunn v. Reeves*, 594 U.S. 731, 739 (2021) (quotation and citation omitted). The Constitution does not require "defense lawyers to scour the globe on the off chance that something will turn up." *Rompilla v. Beard*, 545 U.S. 374, 382-84 (2005). Rather, "[t]here comes a point where a defense attorney will reasonably decide that another strategy is in order, thus 'mak[ing] particular investigations unnecessary.'" *Cullen*, 563 U.S. at 185, n.7 (quoting *Strickland*, 466 U.S. at 691).

In his first claim, Petitioner asserts that counsel failed to conduct a "basic investigation using publicly available information [that] would have uncovered support for an identity defense" [3:21-CV-342, Doc. 2 at 12]. Petitioner specifically argues that counsel's failure to (1) use the "internet to search for names and addresses contained on postal labels," (2) interview Cook, (3) "investigate the circumstances surrounding officer Graham's departure from the Monroe County Sherriff's Department," and (4) investigate the "government's loss or destruction of potentially exculpatory evidence"—the package and packaging material—showed counsel's overall failure to investigate [*See id*. at 9-11].

To start, counsel's investigation was reasonable. *See Wiggins*, 539 U.S. at 527. "[T]he quantum of evidence already known to counsel" in advance of trial would not lead him "to investigate further." *Id*. As to Petitioner's new "identity defense," the evidence known to counsel linked Petitioner to the crime charged [3:21-CV-342, Doc. 2 at 12]. Petitioner's return address and cell phone number were listed on the Priority Mail Express label used to send a package of methamphetamine to Holder in Tennessee, and there were other packages of methamphetamine mailed to Holder in Tennessee that listed Petitioner's address as the return address [*See* Doc. 258 at 38-41, 46, 91-92, 112-115, 165-66; *see also* United States Exhibits 2, 24, 28A, 28B]. Further, on more than one occasion, Petitioner was captured in text messages and recorded phone calls

discussing the shipment of a methamphetamine package [*See* Doc. 145-1 (Call Transcripts); *see also* United States Exhibits 8-12 (Holder), 13B (Cook)]. And records showed that the phone number Cook and Holder contacted to discuss methamphetamine shipments belonged to Petitioner [*See* Doc. 258 at 91-92; *see also* United States Exhibit 13B]. Holder also testified about Petitioner's role in the crime [*See* Doc. 258 at 38-40].

By the time of trial, counsel knew that there was overwhelming evidence tying Petitioner to the conspiracy. It was not deficient for counsel to "reasonably decide[] that a particular strategy is in order" and forgo other potential avenues of investigation. *See Cullen*, 563 U.S. at 185, n.7. Counsel had no duty to investigate a "wholly meritless claim" that someone with a similar name to Petitioner was the individual mailing methamphetamine when robust evidence, including evidence from a coconspirator, indicated that Petitioner was the guilty party. *See Moody v. United States*, 958 F.3d 485, 492 (6th Cir. 2020). As such, counsel was not deficient for failing to scour the internet to locate an individual with a name similar to Petitioner's, then attempt to shift blame to that individual as Petitioner argues [*See* 3:21-CV-342, Docs. 2 at 9, 2-1 at 7]. *See Rompilla*, 545 U.S. at 382-84.

Nor was counsel's decision not to interview Cook when Cook sent a letter to counsel indicating that Cook "lied" in his statement constitutionally infirm [*See* 3:21-CV-342, Doc. 2-1 at 10-11]. Remember that Cook's cooperation led to the interception of the package of methamphetamine around January 5, 2017 [*See* Doc. 258 at 46, 80-85; *see also* United States Exhibit 13B]. Even if Cook "lied" in some part of his statement to law enforcement, the intercepted package, recorded calls, and Holder's text messages with Petitioner speak for themselves. And Holder corroborated Petitioner's voice on recorded calls and role in the conspiracy [*See* Doc. 258 at 33-64]. In light of this overwhelming evidence, Petitioner has not

10

demonstrated any prejudice that arose from counsel's decision not to interview Cook. Thus, the claim fails.

As to his third argument, the Petition offers no reason for why counsel should have "investigate[d] the circumstances surrounding officer Graham's departure from the Monroe County Sheriff's Department" other than Petitioner's post hoc assessment that the departure had the "appearance of a demotion" [3:21-CV-342, Doc. 2 at 10]. The Court has doubts about whether there is any "appearance of a demotion" in the record given Graham's explanation of the departure at trial [*See* Doc. 258 at 76-77]. But even if there were, Petitioner does not sufficiently connect the appearance issue to any prejudice to Petitioner. This failure dooms this claim. *See Strickland*, 466 U.S. at 688, 694.

Last, Petitioner argues that counsel failed to investigate the "government's loss or destruction of potentially exculpatory evidence"—the "packing materials" and package [*See* 3:21-CV-342, Doc. 2 at 11]. At best, counsel could have "requested forensic testing" on the package and materials [*See id.*]. But it's unclear that any useful forensic evidence would have been available after mailing or what use any available evidence would have been [*See* 3:21-CV-342, Doc. 23-1 at 3-4]. Petitioner's address and phone number on the sender portion of the mailing label connected him to the package [*See* Doc. 258 at 38-41, 46, 91-92, 112-115, 117-118; *see also* United States Exhibits 2, 24, 28A, 28B]. The listing of a name other than Petitioner's as the sender could simply be a ruse. And if there were any doubt, the United States introduced text messages and other evidence showing Holder and a phone number linked to Petitioner discussed the mailing of a package of methamphetamine [*See* Doc. 258 at 38-40, 165-66]. And Holder testified that "every package he received" from the address associated with Petitioner "was supposed to" contain methamphetamine, which includes the seized package [*See id.* at 38-40, 71-72]. And Petitioner

verbally communicated with at least one codefendant about mailing packages of methamphetamine [*See* Docs. 145-1 (Call Transcripts), 258 at 91-92]. This evidence was overwhelming. Petitioner's speculation does not show that any failure to request forensic testing of the package itself was prejudicial. *See e.g.*, *Hodge v. Haeberlin*, 579 F.3d 627, 651 (6th Cir. 2009). Therefore this claim fails too.

On the whole, Petitioner has not shown that counsel's investigation was unreasonable or that counsel's strategic decisions were deficient. But even if Petitioner had, he failed to identify any reasonable probability that but for counsel's error(s), the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 688, 694. This is a "high burden." *See Bullard*, 937 F.3d at 661. And the overwhelming evidence of Petitioner's guilt stands directly in the way. The Court therefore **DENIES** Petitioner's first claim.

### ii. Petitioner's Claim That Counsel Failed To Effectively Communicate Fails (Claim Two).

Next, Petitioner argues that his counsel failed to "effectively communicate the applicable law and the government's evidence to [Petitioner], which prevented [Petitioner] from meaningfully considering his options of pleading guilty or proceeding to trial, and deprived [him] of any formal plea offer to consider" [3:21-CV-342, Doc. 2 at 12]. The record belies that argument.

On June 1, 2018, months before trial, counsel sent Petitioner a letter thoroughly assessing the discovery in the case and informing Petitioner of the options before him [*See* 3:21-CV-342, Doc. 2-1 at 24-28]. Counsel specifically informed Petitioner that proceeding to trial was risky and that he faced the risk of "a longer sentence than in the case of a plea" if he went to trial and was found guilty [*See id.* at 24]. On the morning of trial, the Court confirmed Petitioner's desire to proceed to trial [*See* Doc. 258 at 9 (confirming that Petitioner "did not want to enter into a plea agreement with the government")]. Under oath, Petitioner swore that he was not interested in

pursuing a plea agreement, despite his counsel's efforts [*See id.*]. "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Counsel's acquiescence to Petitioner's wish to proceed to trial is not ineffective assistance of counsel. *See Keith v. Mitchell*, 455 F.3d 662, 672 (6th Cir. 2006) (citation omitted). Because Petitioner's claim is "contradicted by the record," he is not entitled to relief.[3] *See Valentine*, 488 F.3d at 333 (quoting *Arredondo*, 178 F.3d at 782). Accordingly, the Court **DENIES** Petitioner's second claim.

### iii. Petitioner's Claim That Counsel Failed To Make A Clear And Complete Record Fails (Claim Three).

Next, Petitioner argues that counsel failed to "take necessary steps to make a clear and complete record in the form of filing pre-trial motions, making objections, and requesting jury instructions" [*See* 3:21-CV-342, Doc. 2 at 14]. In essence, Petitioner's new counsel analyzes trial counsel's performance and identifies things that he believes should have been done differently [*See id.* at 14-17]. But "the Constitution does not insure that defense counsel will recognize and raise every conceivable . . . claim." *Engle v. Isaac*, 456 U.S. 107, 134 (1982). Rather, "experienced trial counsel learn that objections to each potentially objectionable event could actually act to their party's detriment." *Lundgren v. Mitchell*, 440 F.3d 754, 774 (6th Cir. 2006). As such, "[l]earned counsel . . . use objections in a tactical manner." *Id.* Generally, only where "counsel so consistently fail[s] to use objections, despite numerous and clear reasons for doing so, [is] counsel's failure . . . not reasonably . . . part of a trial strategy or tactical choice." *See id.* at 774-75 (citing *See Hodge v. Hurley*, 426 F.3d 368, 376 (6th Cir. 2005)).

---

[3] To the extent Petitioner argues merely that the communication he received about his case and options was not "effectiv[e]," that argument is a "conclusion[]" not a "statement[] of fact" that could present an avenue for relief. *See Valentine*, 488 F.3d at 333.

13

Here, trial counsel made tactical decisions regarding which issues and objections to raise. *See id.* at 774. As Petitioner admits, trial counsel did object at trial, and he filed pretrial motions regarding various evidentiary or testimonial matters that Petitioner now argues are a basis for his ineffective assistance of counsel claim [*See e.g.*, 3:21-CV-342, Doc. 2 at 14-15]. This is not a case where counsel was complacent and failed to challenge the United States's evidence. Further, Petitioner has not shown that counsel's performance fell below "reasonable professional judgment." *Strickland*, 466 U.S. at 690.

Even presuming that counsel was deficient, Petitioner fails to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694. Again, the evidence of Petitioner's guilt was overwhelming. And Petitioner has not shown how the decisions he now claims counsel should have made would have been reasonably likely to change the result. The Court therefore **DENIES** Petitioner's third claim.

### iv. Petitioner's Claim That Counsel Failed To Effectively Raise And Litigate Errors On Appeal Fails (Claim Six).

Last, Petitioner argues that counsel provided ineffective assistance "on appeal" too because counsel was limited in what he could argue on appeal because of his alleged trial errors [*See* 3:21-CV-342, Doc. 2 at 20]. This argument is wrapped up in the one before—if counsel had not made the alleged trial errors, he would have preserved more arguments for appeal. But more is not necessarily better. And without showing prejudice, Petitioner cannot prevail under the law. *See Strickland*, 466 U.S. at 694. Just as Petitioner failed to show that any of the alleged trial errors were prejudicial, he has failed to show that losing the opportunity to raise these issues he now identifies on appeal was prejudicial. Therefore, the Court **DENIES** Petitioner's sixth claim.

14

**B.** **Petitioner's Constitutional Claims Are Barred By Procedural Default, Which Petitioner Has Provided No Basis To Excuse (Claims Four, Five, and Seven).**

Procedural default bars Petitioner's remaining claims. Generally, when a petitioner brings a claim under Section 2255 that "was not raised on direct appeal, it is procedurally defaulted." *Moore v. Mitchell*, 708 F.3d 760, 804 (6th Cir. 2013). Petitioner may only raise a procedurally defaulted claim if he "can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *See Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001) (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)). On direct appeal, Petitioner did not challenge his conviction or sentence based on the purported Fifth, Sixth, and Eighth Amendment violations that (1) his "sentence increased because he exercised his constitutional right to a trial," [3:21-CV-342, Doc. 2 at 18]; (2) "law enforcement destroyed critical packaging evidence," [*id.* at 19]; and (3) the "government failed to disclose exculpatory evidence," [*id.* at 20]. *See United States v. Jimmy McLain Moore*, 810 F. App'x 411 (6th Cir. 2020). These claims are therefore procedurally defaulted. *See Moore*, 708 F.3d at 804.

And Petitioner has not provided any legitimate basis for the Court to conclude that cause and "prejudice," or "actual[] innocence" excuses Petitioner's default. *See Bousley*, 523 U.S. at 623 (defining "actual innocence" as a showing that "it is more likely than not that no reasonable juror would have convicted him"); *Jacobs v. United States*, No. 20-5761, 2021 WL 5014093, at *7 (6th Cir. Oct. 28, 2021) (refusing to excuse procedural default where petitioner failed to "even argu[e] that he is innocent or that he had cause, let alone excusable cause, for failing to raise" a claim). Generally, truly ineffective assistance of counsel may establish cause and prejudice, which excuses procedural default of claims. *See Moody*, 958 F.3d at 489 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). But mere attorney error less than ineffective assistance of counsel does not. *Id.* Here, for the first time in his Reply, Petitioner identifies alleged ineffective assistance of

15

counsel as his excuse for procedural default [*See* 3:21-CV-342, Doc. 18 at 19-20]. But even if the Court considers that argument, as already discussed, Petitioner failed to show counsel was ineffective. And he does not claim actual innocence. As such, Petitioner's procedural default remains. Because Petitioner's remaining claims are procedurally defaulted and he has not met his burden to excuse the procedural default, the Court **DENIES** his fourth, fifth, and seventh claims. *See Peveler*, 269 F.3d at 698.

### III.    Conclusion

Because Petitioner is not entitled to relief under Section 2255, the Court **DENIES** his "Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence" [Doc. 359; *see also* 3:21-CV-342, Doc. 2] and **DISMISSES** Petitioner's civil action, 3:21-CV-342. An appropriate Judgment will enter.

Under Rule 11(a) of the *Rules Governing Section 2255 Proceedings*, upon the entry of a final order adverse to a Petitioner, the Court must "issue or deny a certificate of appealability." The Court may issue a certificate of appealability only when Petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" requires Petitioner to demonstrate that reasonable jurists would conclude that the Court's assessment of Petitioner's claim is "debatable or wrong." *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, no reasonable jurist would question the Court's analysis of Petitioner's claims. Accordingly, the Court **DENIES** a certificate of appealability.

SO ORDERED.

KATHERINE A. CRYTZER
United States District Judge